United States District Court
Southern District of Texas
**ENTERED**
February 04, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KAFI, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-23-4217 |
| FAIRGATE TRUST, *et al.*, | § § § | |
| Defendants. | § § § § | |

## MEMORANDUM AND OPINION

The defendants, Fairgate Trust and Allied Servicing Corporation, ask the court to reconsider its memorandum and opinion granting summary judgment to the plaintiff, Kafi Inc. (Docket Entry Nos. 28, 29).[1]  The defendants present two arguments for reconsideration: (1) the court incorrectly found a sworn declaration from Dennis Lanni, the Trustee for Fairgate Trust, incompetent as summary judgment evidence establishing that the January 2017 and June 2018 accelerations were abandoned; and (2) even if the accelerations were not abandoned, the debtor acknowledged the debt in 2021.

Based on the record, the briefs, and the applicable law, the court grants the motion for reconsideration in part.  The court denies summary judgment to both parties as to the quiet-title and statute-of-limitations issues because there are genuine factual disputes material to determining whether the January 2017 and June 2018 accelerations were abandoned, and the defendants have failed to prove as a matter of law that the debtor acknowledged the debt.  The court grants summary

---

[1] The third defendant, Mortgage Electronic Registration Systems, Inc., has not moved for summary judgment and is not addressed in this opinion.  The moving defendants will be referred to collectively as "Fairgate" or "the defendants."

judgment to Fairgate Trust and Allied Servicing Corporation on the standing issue. The portions of this court's prior opinion that conflict with this opinion, (Docket Entry No. 28), are vacated.

The reasons for these rulings are set out below.

**I.    Background**

In December 2005, Javier Martinez purchased a home in Houston, Texas. He paid for the home, in part, with a promissory note in the principal amount of $29,000, secured by a deed of trust. (Docket Entry Nos. 24-1, 24-2).

After a decade, Mr. Martinez's mortgage payments were in arrears. On several dates between 2016 and 2019, Mr. Martinez was sent notices that the deed of trust would be foreclosed and his property would be sold at a "substitute trustee sale." (Docket Entry Nos. 24-4, 24-5, 24-6, 24-7). In November 2016, Mr. Martinez was sent a notice of default and intent to accelerate. (Docket Entry No. 24-27). In June 2018, he was sent a notice of acceleration and notice of posting and foreclosure. (Docket Entry No. 24-28). In June 2021, Mr. Martinez executed a "Modification of Note, Deed of Trust and Release of Claims Agreement" with the lender. (Docket Entry No. 21-6). In February 2023, Mr. Martinez was sent another notice of default and intent to accelerate. (Docket Entry No. 21-7).

In 2023, Mr. Martinez's homeowners' association sued him for unpaid dues. (Docket Entry No. 24-19). The 269th Judicial District Court of Harris County issued an agreed final judgment for foreclosure against Mr. Martinez. (Docket Entry No. 24-20). In October 2023, Kafi purchased the home at the foreclosure sale for $36,071. (Docket Entry No. 24-21).

Fairgate Trust is the current assignee of the deed of trust. In November 2023, Kafi sued Fairgate, Allied Servicing Corporation, and Mortgage Electronic Registration Systems, Inc. in Texas state court, asserting causes of action for (1) quiet title, (2) a declaration that the defendants

lacked standing to foreclose on the property, and (3) a declaration that the statute of limitations had run because a foreclosure sale did not take place under the deed of trust within four years of acceleration. (Docket Entry No. 1-4). The defendants removed to this court on the basis of diversity jurisdiction. (Docket Entry No. 1).

## II.     The Legal Standard

### A.     The Legal Standard for a Motion to Reconsider

The Federal Rules of Civil Procedure do not specifically provide for motions to reconsider. *Washington ex rel. J.W. v. Katy Indep. Sch. Dist.*, 403 F. Supp. 3d 610, 616 (S.D. Tex. 2019) (citing *St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir. 1997)). A motion seeking reconsideration of a prior ruling is evaluated as a motion to alter or amend a judgment under Rule 59(e) if it is filed within 28 days of the entry of judgment. *Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 182 n.2 (5th Cir. 2012) (per curiam). If the motion is filed after that time, it is analyzed as a motion for relief from a final judgment or order under Rule 60. *Id.* The defendants filed their motion within the 28-day window, so it is considered a Rule 59(e) motion.

"A Rule 59(e) motion calls into question the correctness of a judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004) (quotation marks and quoting reference omitted). A Rule 59(e) motion "'must clearly establish either a manifest error of law or fact or must present newly discovered evidence' and 'cannot be used to raise arguments which could, and should, have been made before the judgment issued.'" *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863–64 (5th Cir. 2003) (quoting *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). "Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Templet*, 367 F.3d at 479. Nevertheless, "the law-of-the-case doctrine does not operate

to prevent a district court from reconsidering prior rulings," and this court "has the power to revisit prior decisions of its own." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 171 (5th Cir. 2010) (quoting reference omitted).

### B. The Rule 56 Standard

"Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747, 749 (5th Cir. 2022) (quoting FED. R. CIV. P. 56(a)). "A fact is material if it 'might affect the outcome of the suit.'" *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019), *as revised* (Jan. 25, 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). When considering a motion for summary judgment, the court "must consider all facts and evidence in the light most favorable to the nonmoving party" and "must draw all reasonable inferences in favor of the nonmoving party." *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion" and pointing to record evidence demonstrating that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* FED. R. CIV. P. 56(c). "When 'the non-movant bears the burden of proof at trial,' a party moving for summary judgment 'may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is a dispute of material fact warranting trial.'" *MDK S.R.L. v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022) (alteration

4

adopted) (quoting *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)).

"Once the moving party has initially shown that there is an absence of evidence to support the non-moving party's cause, the non-movant must come forward with specific facts showing a genuine factual issue for trial." *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 581 (5th Cir. 2021) (quotation marks and quoting reference omitted). "[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 368 (5th Cir. 2021) (quotation marks and quoting reference omitted). Rather, the nonmovant "must identify specific evidence in the record and articulate the precise manner in which that evidence supports [its] claim." *Shah v. VHS San Antonio Partners, L.L.C.*, 985 F.3d 450, 453 (5th Cir. 2021) (alteration adopted) (quotation marks and quoting reference omitted).

The movant is entitled to judgment as a matter of law when "the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp.*, 477 U.S. at 323. But "[i]f 'reasonable minds could differ' on 'the import of the evidence,' a court must deny the motion." *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (quoting *Anderson*, 477 U.S. at 250–51).

### III.   Analysis

#### A.   The Lanni Declaration

Under Federal Rule of Civil Procedure 56(c)(4), an affidavit or declaration offered in support of a summary judgment motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." "[A]n affidavit can adequately support a motion for summary judgment when

the affiant's personal knowledge is based on a review of her employer's business records and the affiant's position with the employer renders her competent to testify on the particular issue which the affidavit concerns." *Carson v. Perry*, No. 95-40551, 1996 WL 400122, at *1 (5th Cir. 1996) (per curiam); *see also F.D.I.C. v. Selaiden Builders, Inc.*, 973 F.2d 1249, 1254–55 & n.12 (5th Cir. 1992) (the district court did not err in considering an affidavit from an asset manager of the FDIC-Receiver, who stated that his personal knowledge was based on his review of the FDIC-Receiver's business records), *cert. denied*, 507 U.S. 1051 (1993); *RTC v. Camp*, 965 F.2d 25, 29 (5th Cir. 1992)). This is particularly true "when there is no reason for the court to doubt the veracity of the affiant's testimony." *Carson*, 1996 WL 400122, at *1.

Mr. Lanni is the Trustee for Fairgate. (Docket Entry No. 21-1 at ¶ 1). In his declaration, Mr. Lanni describes the contents of the "Loan Records" maintained by Fairgate as to the mortgage loans that Allied services, including Mr. Martinez's loan. (*Id.* at ¶¶ 2, 4). Mr. Lanni "ha[s] access to the Loan Records with respect to the loan at issue" and has "knowledge of how they are maintained." (*Id.* at ¶ 2). He states that "the Loan Records are made at the time of the events and conditions they describe" based on firsthand knowledge. (*Id.*). He also states that the "Loan Records are maintained in Fairgate's regular course of business." (*Id*). Mr. Lanni reviewed the Loan Records and, based on that review, "gained knowledge of the facts set forth" in his declaration. (*Id.*). These facts establish that the Loan Records fall within the hearsay exception for records of a regularly conducted activity. *See* FED. R. EVID. 803(6). They also establish that Mr. Lanni had personal knowledge based on his review of the business records, and that his position and responsibility to be familiar with the records of the loans that Allied services made him competent to testify as to what information the Loan Records contained about Mr. Martinez's payments. *See Carson*, 1996 WL 400122, at *1.

6

The fact that the records are not attached to the declaration does not exclude the declaration from the court's consideration on summary judgment. As the Fifth Circuit has explained, "materials cited to support or dispute a fact need only be *capable* of being presented in a form that would be admissible in evidence." *Maurer v. Indep. Town*, 870 F.3d 380, 384 (5th Cir. 2017) (quotation marks and quoting references omitted); *see also* FED. R. CIV. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."). "This flexibility allows the court to consider the evidence that would likely be admitted at trial—as summary judgment is trying to determine if the evidence admitted at trial would allow a jury to find in favor of the nonmovant—without imposing on parties the time and expense it takes to authenticate everything in the record." *Maurer*, 870 F.3d at 384.

Accordingly, trial courts in this circuit have overruled hearsay, authentication, and personal knowledge objections to summary judgment evidence when that evidence was capable of being presented in an admissible form. *See, e.g.*, *United Healthcare Servs., Inc. v. Rossel*, No. 3:21-CV-1547-L-BT, 2024 WL 4451761, at *9 (N.D. Tex. July 23, 2024) (overruling objections to summary judgment evidence because "[the defendants] have not shown that [the plaintiffs] will be unable to introduce the information [the defendants] identify as hearsay in an acceptable format at trial or that [the plaintiffs] will not be able to authenticate this information at trial"), *report and recommendation adopted*, No. 3:21-CV-1547-L-BT, 2024 WL 4326539 (N.D. Tex. Sept. 27, 2024); *Lehman v. Select Portfolio Servicing, Inc.*, No. 4:13-CV-720, 2015 WL 123868, at *2 (E.D. Tex. Jan. 7, 2015) (the affiant's position and review of the records gave him personal knowledge of facts about the plaintiff's loan, so the affidavit was competent summary judgment evidence even without the records attached).

The Fifth Circuit has also overruled hearsay and personal knowledge objections to a records custodian's affidavit considered on summary judgment, even though the underlying records were not attached to the affidavit, when "there [was] no reason to doubt the accuracy of [the] affidavit." *Carson*, 1996 WL 400122, at *1–2;[2] *see also Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 250 (5th Cir. 2011) (citing approvingly the affidavit of a corporate officer submitted in support of summary judgment, stating that the officer had knowledge of the corporate structure and had reviewed relevant business records).

Mr. Lanni's declaration shows that his testimony and the Loan Records are "capable of being presented in a form that would be admissible in evidence." *See Maurer*, 870 F.3d at 384; FED. R. CIV. P. 56(c)(2), (4). Although the court remains puzzled about why Fairgate did not submit the Loan Records themselves, the court cannot identify a reason to doubt the truthfulness of Mr. Lanni's declaration. *See Carson*, 1996 WL 400122, at *1. Fairgate apparently produced the payment history records during discovery, (Docket Entry No. 26 at 3), and Kafi presents no evidence or argument suggesting that Mr. Lanni's declaration is false. *Cf.* FED. R. EVID. 803(6)(E) (the burden is on the party opposing the admission of business records to "show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness"). Indeed, Kafi has disputed only the admissibility, not the accuracy, of the Lanni declaration. *See* (Docket Entry No. 24 at 14–16); (Docket Entry No. 31 at 3–5). Fairgate can easily overcome Kafi's evidentiary objections at trial by submitting the Loan Records along with Mr. Lanni's testimony.

---

[2] In *Carson*, the court added that "there is no reason to doubt the accuracy of [the] affidavit because [the] trust fund account records were on file with the court and were considered by the district court when it ruled on the defendants' motion for summary judgment." 1996 WL 400122, at *2. Even though the Loan Records have not been filed, this court similarly has no reason to doubt the accuracy of the Lanni declaration, as detailed herein.

Because Mr. Lanni's declaration sets out facts that would be admissible at trial, and in the absence of any reason to question Mr. Lanni's truthfulness, the court concludes that the Lanni declaration is competent summary judgment evidence. The portion of this court's prior opinion that states otherwise, (Docket Entry No. 28), is vacated.

### B. The Issue of Abandonment

A secured lender must sue for the foreclosure of a real property lien "not later than four years after the day the cause of action accrues." *Boren v. U.S. Nat'l Bank Ass'n*, 807 F.3d 99, 104 (5th Cir. 2015) (quoting TEX. CIV. PRAC. & REM. CODE § 16.035(a)). "If a note or deed of trust secured by real property contains an optional acceleration clause," the cause of action accrues "when the holder actually exercises its option to accelerate." *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001). To exercise the option, the note holder must send "both a notice of intent to accelerate and a notice of acceleration." *Boren*, 807 F.3d at 104 (quoting *EMC Mortg. Corp. v Window Box Ass'n, Inc.*, 264 S.W.3d 331, 335–36 (Tex. App.—Waco 2008, no pet.)). "So long as it is preceded by the required notice of intent to accelerate, notice of a trustee's sale constitutes unequivocal action indicating the debt is accelerated." *Karam v. Brown*, 407 S.W.3d 464, 470 (Tex. App.—El Paso 2013, no pet.).

If an acceleration has been abandoned, the limitations period generally restarts. *Boren*, 807 F.3d at 103–06; *Bitterroot Holdings, L.L.C. v. MTGLQ Inv'rs, L.P.*, 648 F. App'x 414, 418 (5th Cir. 2016) (per curiam). Acceleration can be abandoned "either through joint action with the borrower, or through [the lender's] own, unilateral action, which effectively restores the note's original maturity date." *Deutsche Bank Nat'l Tr. Co. v. Anthony*, No. 4:19-CV-688, 2021 WL 8016157, at *5 (S.D. Tex. Feb. 22, 2021) (quoting reference omitted). "A lender can unilaterally abandon acceleration 'through notice to the borrower that expressly states the holder is abandoning

9

the acceleration.'" *Id.* (quoting *Pitts v. Bank of N.Y. Mellon Tr. Co.*, 583 S.W.3d 258, 262–63 (Tex. App.—Dallas 2018, no pet.)). A lender also abandons acceleration if it "continues to accept payments without exacting any remedies available to it upon declared maturity." *Bitterroot*, 648 F. App'x at 418 (quoting *Holy Cross*, 44 S.W.3d at 566–67). If acceleration is not abandoned, and foreclosure does not occur within four years, the lender's real property lien and power of sale to enforce the real property lien become void. *Bitterroot Holdings, LLC v. Bank of N.Y. Mellon*, No. SA-14-CA-0804-FB, 2016 WL 11478282, at *8 (W.D. Tex. Nov. 14, 2016), *report and recommendation adopted*, No. 14-CV-804 (RCL), 2017 WL 10181041 (W.D. Tex. Aug. 4, 2017); TEX. CIV. PRAC. & REM. CODE §§ 16.035(b), (d).

According to Kafi, the note was accelerated in January 2016, January 2017, June 2018, and September 2019. (Docket Entry No. 24 at 10). On each of these dates, Mr. Martinez was sent notices that the deed of trust would be foreclosed and his property would be sold at a "substitute trustee sale." (Docket Entry Nos. 24-4, 24-5, 24-6, 24-7).

Kafi alleges in its complaint that, "[u]pon information and belief, the January [] 2016 acceleration was preceded by a notice of intent to accelerate." (Docket Entry No. 1-4 at ¶ 58). But there is no evidence in the summary judgment record of this notice being sent, much less received. The lack of evidence means that, as a matter of law, the note was not accelerated in January 2016. *See Karam*, 407 S.W.3d at 470.

The record includes two notices of intent to accelerate: one on November 30, 2016, and another on February 24, 2023. (Docket Entry Nos. 21-5, 21-7); *see also* (Docket Entry No. 24 at 17). Accordingly, the January 2017, June 2018, and September 2019 notices of foreclosure were preceded by a single notice of intent to accelerate.

10

The February 2023 notice stated that, "to cure [the] default," Mr. Martinez must "pay to this office all past due payments plus late charges and any payments that may become due between the date of this notice and the date the default is cured." (Docket Entry No. 21-7 at 1). This notice constitutes abandonment of the September 2019 acceleration. *See Boren*, 807 F.3d at 104, 106 (a notice of default informing the borrower "that the total amount necessary to bring their loan current was the amount due under the original terms of the payment" constituted abandonment and reset the statute of limitations). Kafi does not argue otherwise. (Docket Entry No. 24 at 17–18). However, the February 2023 notice could not have abandoned the January 2017 and June 2018 accelerations because more than four years had passed between those accelerations and the February 2023 notice. *See* TEX. CIV. PRAC. & REM. CODE §§ 16.035(b), (d).

The issue is whether the January 2017 and June 2018 accelerations were abandoned within the four-year period. According to Mr. Lanni's declaration, Mr. Martinez "made payments that were accepted and applied to the Loan balance by the then lender on February 6, 2017[,] and again on June 6, 2019." (Docket Entry No. 21-1 at ¶ 8). In response, Kafi argues that Fairgate has not shown that these partial payments were accepted "without exacting any remedies available to it upon declared maturity." *See Bitterroot*, 648 F. App'x at 418. If the lender abandoned the acceleration by accepting payments in February 2017 and June 2019, a new notice of intent to accelerate would be required as the first step to re-accelerating the loan. *Wilmington Tr., Nat'l Ass'n v. Rob*, 891 F.3d 174, 177 (5th Cir. 2018). However, the record shows that the lender continued to notice the property for sale without issuing a renewed notice of intent. *See* (Docket Entry No. 24-6–24-16). This suggests that the lender either did not intend to abandon the acceleration or, at the least, "acted 'inconsistently' by rescinding acceleration and then re-accelerating without notice." *See Wilmington Tr., Nat'l Ass'n*, 891 F.3d at 177; *see also Deutsche*

11

*Bank Nat'l Tr. Co. v. Gladle*, No. A-19-CV-00613-SS, 2020 WL 6379281, at *8 (W.D. Tex. July 30, 2020) (conflicting evidence about a lender's intent to abandon an acceleration precluded summary judgment). Fairgate does not respond to this argument. *See* (Docket Entry No. 26 at 2–3).

The court concludes that there is a genuine factual dispute material to determining whether the January 2017 and June 2018 accelerations were abandoned. Neither party is entitled to summary judgment on this issue. The portion of this court's prior opinion that states otherwise, (Docket Entry No. 28), is vacated.

### C.     The Issue of Acknowledgment

In the alternative, Fairgate argues that Mr. Martinez's execution of a "Modification of Note, Deed of Trust and Release of Claims Agreement" in 2021 acknowledged the debt and precludes a statute-of-limitations defense. (Docket Entry No. 29 at 3-4); (Docket Entry No. 21 at 10-11); (Docket Entry No. 21-6). Fairgate supports this argument by providing the legal framework for acknowledgment, without applying that standard to the 2021 Agreement. (Docket Entry No. 29 at 3-4); (Docket Entry No. 21 at 10-11). Kafi argues that the 2021 Agreement does not meet the standard for acknowledgment because the document is conditional and does not clearly and unequivocally acknowledge the debt. (Docket Entry No. 24 at 13-14).

Acknowledgment of a debt creates a new obligation for the purpose of the statute of limitations. *See Stine v. Stewart*, 80 S.W.3d 586, 591 (Tex. 2002); *In re Fullinwider*, No. 14-34787, 2015 WL 1208033, at *2 (Bankr. S.D. Tex. Mar. 11, 2015). "[A]n 'acknowledgment,' must: "1) be in writing and signed by the party to be charged; 2) contain an unequivocal acknowledgment of the justness or the existence of the particular obligation; and 3) refer to the obligation and express a willingness to honor that obligation." *In re Fullinwider*, 2015 WL

1208033, at *2 (citing *Stine*, 80 S.W.3d at 591). "Additionally, the amount of the obligation the acknowledgment describes must be 'susceptible of ready ascertainment.'" *Id.* (quoting *Stine*, 80 S.W.3d at 591–92).

Under the law of acknowledgment, "[i]f the writing as a whole reflects that the debtor's new promise to pay is conditional, limited, or qualified, the creditor may not recover unless he shows fulfillment of the restriction that the debtor has placed upon his new promise to pay." *Murphy v. Fairfield Fin. Group, Inc.*, No. 03-99-00562-CV, 2000 WL 689758, at *5 (Tex. App.—Austin May 31, 2000, pet. denied). The 2021 Agreement lists two conditions precedent and also establishes that cancellation of the foreclosure is conditional: "Borrower must make on time installment payments for the loan modification fee as well as on time monthly payments for 3 months for this loan modification to successfully complete its trial period. Foreclosure will be cancelled after the successful completion of this loan modification trial period." (Docket Entry No. 21-6 at 1). Fairgate does not point to any evidence that Mr. Martinez met these conditions or otherwise address this argument in its summary judgment briefing or motion for reconsideration.

Summary judgment on this issue is denied.

## D. Standing to Foreclose

"Under the Texas Property Code, the only party with standing to initiate a non-judicial foreclosure sale is the mortgagee, or the mortgage servicer acting on behalf of the current mortgagee." *Miller v. Homecomings Fin., LLC*, 881 F. Supp. 2d 825, 828–29 (S.D. Tex. 2012) (footnote omitted). "A mortgagee includes the grantee, beneficiary, owner, or holder of a security instrument, such as a deed of trust, or if the security interest has been assigned of record, the last person to whom the security interest has been assigned of record." *Hernandez v. Residential Accredit Loans Inc., Mortg. Asset-Backed Pass-Through Certificates, Series 2007-QS3*, No. CV

H-18-0724, 2018 WL 4033785, at *6 (S.D. Tex. Aug. 23, 2018) (quotation marks and quoting reference omitted). "In order to enforce the note as a holder, a party who is not the original lender must prove 'successive transfers of possession and indorsement' establishing an 'unbroken chain of title.'" *Miller*, 881 F. Supp. 2d at 829 (quoting reference omitted).

Fairgate submitted documents demonstrating a recorded chain of assignments from the original lender to Fairgate. *See* (Docket Entry No. 21-3) (the deed of trust executed by Mr. Martinez listing Homecomings Financial Network as the original lender and Mortgage Electronic Registration Systems as the nominee); (Docket Entry No. 21-4 at 1) (the corporate assignment of deed of trust from Mortgage Electronic Registration Systems, as nominee for Homecomings Financial Network, to Trinity Financial Services, recorded on July 14, 2014); (*id.* at 3) (the corporate assignment of deed of trust from Trinity Financial Services to Full House Leasing, recorded on July 14, 2014); (*id.* at 5) (the corporate assignment of deed of trust from Full House Leasing to Fairgate Trust, recorded on February 4, 2021).[3] Because these documents establish "successive transfers of possession and indorsement establishing an unbroken chain of title," Fairgate has standing to enforce the note as a holder. *See Miller*, 881 F. Supp. 2d at 829 (quotation marks and quoting reference omitted).

## IV.   Conclusion

Fairgate has standing to foreclose on the property. Fairgate has also shown, as a matter of law, that the note was not accelerated in January 2016 and that the September 2019 acceleration was abandoned. The court grants summary judgment to Fairgate on those issues. The court

---

[3] The dates relied on by Kafi for these assignments are the dates that they were prepared or signed. *See* (Docket Entry No. 24 at 22) (citing Docket Entry Nos. 24-22–24-26). The assignments become effective upon recording, and there is no dispute about the recorded dates included in this paragraph. *Compare* (Docket Entry Nos. 24-22–24-26) *with* (Docket Entry No. 21-4).

otherwise denies Fairgate's motion for summary judgment, (Docket Entry No. 21); Fairgate's motion for reconsideration, (Docket Entry No. 29); and Kafi's motion for summary judgment, (Docket Entry No. 24). The court cannot resolve the quiet-title or statute-of-limitations issues on the present summary judgment record because there are genuine factual disputes material to determining whether the January 2017 and June 2018 accelerations were abandoned, and Fairgate has failed to prove as a matter of law that Mr. Martinez acknowledged the debt in 2021.

The portions of this court's prior opinion that conflict with this opinion, (Docket Entry No. 28), are vacated. A status and scheduling conference is set for Monday, February 10, 2025, at 2:00 p.m., by Zoom.

SIGNED on February 4, 2025, at Houston, Texas.

_____
Lee H. Rosenthal
Senior United States District Judge